IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Committee of Seventy,                    :
Philadelphia 3.0, Jordan Strauss,        :
Brian Krisch, and Katherine Rivera,      :
                                         :
                    Appellants           :
                                         :
          v.                             : No. 611 C.D. 2017
                                         : Submitted: August 25, 2017
Anthony Clark, in his official capacity  :
as City Commissioner, Al Schmidt,        :
in his official capacity as City         :
Commissioner, and Lisa M. Deeley,        :
in her official capacity as City         :
Commissioner                             :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: September 11, 2017


          The Committee of Seventy (Committee),[1] Philadelphia 3.0,[2] Jordan

Strauss, Brian Krisch, and Katherine Rivera[3] (collectively, Petitioners) appeal the

---

[1] The Committee of Seventy is a non-profit, non-partisan organization under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. §501(c)(3), that was established in 1904 and "works to ensure fair and well-run elections in Philadelphia and advocates for efficiency, transparency, and ethical behavior from public officials and all branches of government." Reproduced Record (R.R.) at 13a.

[2] Philadelphia 3.0 is a Section 501(c)(4) organization, 26 U.S.C. §501(c)(4), that was established two years ago and "expends time, money, and resources backing candidates for City Council and recruiting hundreds of citizens to run for local election-board and party office . . . ." R.R. at 14a-15a.

order of the Philadelphia County (County) Court of Common Pleas (trial court) denying with prejudice their petition for declaratory judgment. We affirm.

On January 18, 2017, the principals of the Committee and Philadelphia 3.0, as the Better Philadelphia Elections Coalition, sent the President Judge of the trial court a letter asking the President Judge to appoint judges or electors to "serve in the stead of the City Commissioners [as the County's Board of Election] for the duration of the [May 16, 2017 Municipal Primary Election (Election)]" because there was a proposed amendment to the Philadelphia Home Rule Charter (Charter)[4] on the ballot. R.R. at 45a. While "recogniz[ing] that it has

---

**(continued…)**

[3] Strauss is a qualified elector and was a candidate for nomination to the office of Judge of Election for Ward 1, Division 4 of the City of Philadelphia (City) in the May 16, 2017 Municipal Primary Election (Election). R.R. at 16a. Krisch is a qualified elector and was a candidate for nomination to the office of Judge of Election for Ward 15, Division 3 of the City in the Election. *Id.* at 17a. Rivera was a candidate for nomination to the office of Inspector of Election for Ward 31, Division 3 of the City in the Election. *Id.*

[4] In 1951, the City's electorate adopted the Charter pursuant to the First Class City Home Rule Act (Act), Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§13101-13116; 13131-13133; 13151-13157. *See also* Section 2(c) of the Act, added by Act of August 26, 1953, P.L. 1476, *as amended*, 53 P.S. §13132(c) ("Subject to the provisions of the [Charter] and the [Act], the Council of the [City] shall have full powers to legislate with respect to the . . . powers, functions and duties of the . . . City Commissioners . . . ."); Section 1-100 of the Charter ("Pursuant to Section 1 of Article XV of the Constitution and the [Act], the City of Philadelphia . . . shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions . . . . The City shall have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers . . . .").

Section 1 of the Act states that "[a]ny city of the first class . . . may amend its charter . . . ." 53 P.S. §13101. Additionally, Section 6 states, in pertinent part:

> Amendments to the charter for the government of any city may be proposed by a resolution of the city council adopted with the

**(Footnote continued on next page…)**

not been the past practice of the City Commissioners to recuse themselves when a Charter amendment has been on the ballot, nor has the [] President Judge so required," *id.*, they argued that Section 301(c) of the Pennsylvania Election Code (Election Code)[5] compelled such action.

---

**(continued…)**

> concurrence of two-thirds of its elected members. Amendments . . . may also be proposed by a petition presented to the city council of the city. Such petition shall be in the form prescribed by the city council and shall be signed by not less than twenty thousand registered electors of the city . . . . If the city council, by a resolution adopted with the concurrence of a majority of its elected members, shall so determine, such proposed amendments shall be submitted to the qualified electors of the city for their approval or disapproval; otherwise, the petition shall be deemed denied.

53 P.S. §13106. Further, Section 13 states:

> All elections provided for in this act shall be conducted by the election officers for such city in accordance with the [Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2600-3591]. The election officers shall count the votes cast and make return thereof to the county board of elections. The result of any such election shall be computed by the county board of elections in the same manner as is provided by law for the computation of similar returns at any such election. Certificates of the result of any such election shall be filed by the county board of elections with the city council of the city and with the Secretary of the Commonwealth.

53 P.S. §13113. *But see* footnote 7 *infra*.

[5] 25 P.S. §2641(c). Section 301(c) states, in relevant part:

> (c) Whenever a member of the board of county commissioners is a candidate for nomination or election to any public office, the President Judge of the Court of Common Pleas shall appoint a judge or an elector of the county to serve in his stead. Whenever

**(Footnote continued on next page…)**

3

On March 6, 2017, the Deputy Court Administrator responded on the President Judge's behalf, explaining that the President Judge "is unable to take any official act pursuant to [the] letter," that "[a]ny requests for the exercise of judicial authority must be raised in an official manner, as provided by law," and that "[i]n light of the fact that [the President Judge] may be asked to decide the legal question you raise, she is not able to respond to your letter." R.R. at 49a.

On March 27, 2017, Petitioners filed a Petition for Review in the Nature of Mandamus with the Pennsylvania Supreme Court asking the Court to compel the President Judge to appoint, pursuant to Section 301(c) of the Election Code, judges or electors to serve as the County's Board of Elections in the stead of the City Commissioners acting in that capacity for the Election. The City Commissioners were permitted leave to intervene and filed preliminary objections to the petition. On April 19, 2017, the Supreme Court issued a per curiam order denying the petition and dismissing the preliminary objections. *See Committee of Seventy v. President Judge of the Court of Common Pleas of Philadelphia*, (Pa., No. 36 EM 2017, filed April 19, 2017).

On April 24, 2017, Petitioners filed the instant petition under the Declaratory Judgments Act[6] asking the trial court to declare that Section 301(c) of

---

**(continued…)**

> there appears on the ballot a question relating to the adoption of a Home Rule Charter for the county or amendments to an existing county Home Rule Charter, the President Judge of the Court of Common Pleas shall appoint judges or electors of the county to serve in the stead of the county commissioners.

[6] 42 Pa. C.S. §§7531-7541. Section 7533 of the Declaratory Judgments Act provides, in pertinent part, that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or **(Footnote continued on next page…)**

the Election Code applies to elections within the City "whenever there appears on the ballot a question relating to the adoption of amendments to the Philadelphia Home Rule Charter [(Charter)]." R.R. at 31a. Because the Election ballot contained a proposed amendment to the City's Charter, Petitioners asked the trial court "to enter a declaratory judgment that [the named City Commissioner Respondents (collectively, Respondents)] are statutorily ineligible to carry out the functions of their offices as City Commissioners" with respect to their oversight of the Election.[7] *Id.* at 32a. Specifically, Petitioners alleged that the "county Home

---

**(continued…)**

validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa. C.S. §7533.

[7] Section 301(a) of the Election Code states that "[t]here shall be a county board of elections in and for each county of this Commonwealth, which shall have jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions of this act." 25 P.S. §2641(a). However, Article 9, Section 13 of the Pennsylvania Constitution provides, in relevant part:

> (a) In Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within its area through officers selected in such manner as may be provided by law.
>
> * * *
>
> (c) All laws applicable to the County of Philadelphia shall apply to the City of Philadelphia.
>
> (d) The City of Philadelphia shall have, assume and take over all powers, property, obligations and indebtedness of the County of Philadelphia.

**(Footnote continued on next page…)**

5

**(continued…)**

(e)  The provisions of section two of this article shall apply with full force and effect to the functions of the county government hereafter to be performed by the city government.

(f)  Upon adoption of this amendment all county officers shall become officers of the City of Philadelphia . . . .

Pa. Const. art. IX, §13(a), (c)-(f).

In turn, Article 9, Section 2 states, in pertinent part:

Adoption, amendment or repeal of a home rule charter shall be by referendum.  The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. . . . A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

Pa. Const. art. IX, §2.

As outlined above, the Act provides the election procedure by which the City's Charter may be amended.  *See* footnote 4 *supra*.  However, with respect to the county offices, such as the board of elections under Section 301(a) of the Election Code, Section 2-112(4) of the Philadelphia Code states that "[a]ll the powers, duties and functions of the City Commissioners in their capacity as the County Board of Elections relating to the conduct of primaries and elections shall continue to be exercised by the City Commissioners." *See also* Section 2(c) of the Act ("Subject to the provisions of the [Charter] and the [Act], the Council of the [City] shall have full powers to legislate with respect to the . . . powers, functions and duties of the . . . City Commissioners . . . ."); *Lennox v. Clark*, 93 A.2d 834, 838 (Pa. 1953) ("It will be further noted that [upon the adoption of the constitutional provision], all the functions of county government, that is to say, all the activities or duties theretofore performed by the county officers, are *thenceforth* to be performed by the city; the city is to take over *then and there*, as part of its own government, the performance of the functions of the county government.") (emphasis in original).

6

Rule Charter" provision in Section 301(c) applies to the City's Charter because: (1) Section 301(b) of the Election Code[8] expressly singles out Philadelphia County from all other counties that have a home rule charter so it cannot be implicitly singled out with respect to subsection (c); (2) the exclusion of "counties of the first class" in subsection (b) would be rendered meaningless and surplusage in violation of Section 1921(a) of the Statutory Construction Act[9] unless it is construed to include the County as one of those with a county home rule charter subject to its provisions; (3) prior to the enactment of Section 301(c), the constitutional consolidation of the City and the County made both one in the same subject to the Charter so that subsection (c) applies to the County just as it applies to all other counties subject to home rule charters; and (4) Section 301(c) applies even though there is no conflict of interest as the amendments are placed on the ballot by City Council and not the City Commissioners because there is no such "conflict of

---

[8] Section 301(b) states, in relevant part:

> (b) In each county of the Commonwealth, the county board of elections shall consist of the county commissioners of such county ex officio, or any officials or board who are performing or may perform the duties of the county commissioners, who shall serve without additional compensation as such. *Except in counties of the first class*, in counties which have adopted home rule charters or optional plans the board of elections shall consist of the members of the county body which performs legislative functions unless the county charter or optional plan provides for the appointment of the board of elections.

25 P.S. §2641(b) (emphasis added).

[9] 1 Pa. C.S. §1921(a). Section 1921(a) states that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

7

interest" limitation within that subsection. R.R. at 21a-31a.[10] Respondents filed preliminary objections to the petition, asserting a lack of the trial court's jurisdiction due to Petitioners' failure to join indispensable parties and Petitioners' failure to state a claim for which relief may be granted. *Id.* at 78-83.

On May 15, 2017, following hearing, the trial court issued the instant order denying with prejudice the petition for declaratory judgment. Outlining the authority under which the Charter was adopted and is amended, the trial court rejected Petitioners' assertion that it is a "county Home Rule Charter" within the purview of Section 301 of the Election Code. Trial Court 5/15/17 Opinion at 3-4. The trial court also outlined the legislative history of the various amended forms of Section 301, concluding that subsection (b) does not refer to the Charter, but to a charter enacted in other counties pursuant to the Home Rule Charter and Optional Plans Law,[11] and that subsection (c) only requires members of a county election board to be substituted when they are running for office or an amendment to a charter that they have enacted as part of the legislative body is on the ballot for consideration by the electors. Trial Court 5/15/17 Opinion at 4-9. Based on the foregoing, the trial court concluded that Section 301(c) did not require the replacement of the City Commissioners as members of the County Election Board in elections in which there is an amendment to the Charter. *Id.*[12]

---

[10] Petitioners also pointed out that the present and former President Judges have applied the other provision of Section 301(c) and appointed substitute members of the County Board of Elections to sit for those City Commissioners running for reelection. *See* Brief of Appellants at Exhibit B.

[11] 53 Pa. C.S. §§2901-2984.

[12] As alleged in the petition, the trial court acknowledged, "Nonetheless, we do appoint judges to act in place of Philadelphia's county board of election whenever a City Commissioner **(Footnote continued on next page…)**

8

On appeal,[13] Petitioners argue that: (1) Section 301(c) of the Election Code applies to elections in Philadelphia; (2) Section 301(b)'s reference to "counties of the first class" in conjunction with Section 301(c)'s reference to "an existing home rule charter" renders the City Commissioners ineligible to oversee elections involving an amendment to the Charter; and (3) for purposes of Section 301(c), the Charter did not remain a "city Home Rule Charter" but also became a "county Home Rule Charter" when the City and the County were consolidated.

However, after reviewing the record, the parties' briefs and the law, we conclude that Petitioners' appellate issues have been ably resolved in the thorough and well-reasoned opinion of the Honorable Sheila Woods-Skipper. Therefore, we affirm on the basis of the trial court's opinion in the matter of *Committee of Seventy, Philadelphia 3.0, Jordan Strauss, Brian Krisch, and Katherine Rivera v. Anthony Clark, in his official capacity as City Commissioner,*

---

**(continued…)**

is a candidate for reelection to that position in order to avoid a conflict of interest." Trial Court 5/15/17 Opinion at 7 n.2. The trial court also dismissed Respondents' preliminary objections as moot. *Id.* at 9 n.4.

[13] As this Court has explained:

> An appellate court's standard of review in a declaratory judgment action is limited to determining whether the trial court committed a clear abuse of discretion or an error of law. "An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence." In a case where the issues are questions of law, the standard of review is de novo and the scope of review is plenary.

*Pirillo v. Vanco*, 74 A.3d 366, 368 n.5 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 322 (Pa. 2014) (citations omitted).

9

*Al Schmidt, in his official capacity as City Commissioner, and Lisa M. Deeley, in her official capacity as City Commissioner*, (C.P. Phila., April Term, 2017 No. 3418, filed May 15, 2017).

MICHAEL H. WOJCIK, Judge

Judge Cosgrove did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Committee of Seventy,<br>Philadelphia 3.0, Jordan Strauss,<br>Brian Krisch, and Katherine Rivera, | : | |
| | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 611 C.D. 2017 |
| | : | |
| Anthony Clark, in his official capacity<br>as City Commissioner, Al Schmidt,<br>in his official capacity as City<br>Commissioner, and Lisa M. Deeley,<br>in her official capacity as City<br>Commissioner | : | |

# **O R D E R**

AND NOW, this 11<u>th</u> day of <u>September</u>, 2017, the order of the Philadelphia County Court of Common Pleas dated May 15, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge